## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**HEIDI MCFARLAND**                                  **CIVIL ACTION NO.**

**VERSUS**

                                                     **21-314-JWD-EWD**

**NATIONAL INTERSTATE**
**INSURANCE COMPANY, ET AL.**

 Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

 In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

 ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

 Signed in Baton Rouge, Louisiana, on November 15, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

HEIDI MCFARLAND                                    CIVIL ACTION NO.

VERSUS

                                                   21-314-JWD-EWD

NATIONAL INTERSTATE
INSURANCE COMPANY, ET AL.

**MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

Before the Court is the Notice of Removal filed by Defendant National Interstate Insurance

Company ("National").[1]  Plaintiff Heidi McFarland ("Plaintiff") has not filed a motion to remand;

however, as National has not established the requisite amount in controversy, it is recommended[2]

that this matter be remanded *sua sponte* to the Nineteenth Judicial District Court, Parish of East

Baton Rouge, State of Louisiana.

**I.      Background**

This is a civil action involving claims for damages by Heidi McFarland ("Plaintiff") based

upon the injuries she allegedly sustained on June 19, 2020 while travelling on Interstate 12 in

Baton Rouge, Louisiana (the "Accident").  Plaintiff's vehicle was allegedly struck by the vehicle

driven by Defendant Antonio Reid[3] ("Reid"), who was operating his vehicle while in the course

and scope of his employment with Defendant West TN Expediting, Inc. ("West"), and was insured

by National (collectively, "Defendants").[4]  On April 27, 2021, Plaintiff filed her Petition for

Damages ("Petition") against Defendants in the Nineteenth Judicial District Court for the Parish

---

[1] R. Doc. 1.
[2] *See, e.g.*, *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[A] motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." )
[3] Per the Petition, Reid has several aliases, *i.e.*, "Mart Antonio Tapp" and "Mart Antonio Reid." R. Doc. 1-4, ¶ 1.
[4] R. Doc. 1-4, ¶¶ 2-3, 8-9.

of East Baton Rouge.[5]  Plaintiff claims that she suffered personal injuries as a result of the Accident, caused by the negligence of Reid, for which West is vicariously liable.[6]  On May 28, 2021, National removed the matter to this Court, based on diversity jurisdiction under 28 U.S.C. § 1332.[7] The Notice of Removal properly alleges that Plaintiff is domiciled in Louisiana; National is a corporation organized, and with its principal place of business, in Ohio; West is a corporation organized, and with its principal place of business, in Tennessee; and Reid is domiciled in Tennessee; therefore, complete diversity of citizenship exists.[8]

However, and as set forth more fully in the Court's June 2, 2021 Order, the Notice of Removal, despite appending some of Plaintiff's medical records, was deficient because National did not establish that Plaintiff's damages are likely to exceed $75,000, exclusive of interest and costs.[9]  National was ordered to file a memorandum and supporting evidence concerning whether the amount in controversy requirement of 28 U.S.C. § 1332 is met, and Plaintiff was ordered to file a Notice stating that Plaintiff did not dispute that National established the jurisdictional requirements of 28 U.S.C. § 1332, or a Motion to Remand.[10]  National filed its Memorandum in Support of the Amount in Controversy ("Memorandum"), as well as additional medical records, to which Plaintiff filed a "Notice" in response thereto, which describes settlement negotiations.[11] Notwithstanding these actions, because National has not met its burden of establishing by a preponderance of the evidence that the amount in controversy in this matter likely exceeds the jurisdictional threshold, remand is recommended.

---

[5] R. Doc. 1-4.
[6] R. Doc. 1-4, ¶¶ 4-7.
[7] R. Doc. 1, ¶¶ 5, 11.  At the time of removal, National contended that Reid and West had not been served, but it was anticipated that they would be represented by the same counsel and would join in and consent to removal.  R. Doc. 1, ¶¶ 2, 6.  Reid and West have since appeared, represented by the same counsel as National.  R. Docs. 11-12 (Answers).
[8] R. Doc. 1, ¶¶ 4(a)-(d).
[9] R. Doc. 3.
[10] R. Doc. 3.
[11] R. Docs. 8, 8-1, and 9.

## II.    Law and Analysis

### A.  Removal Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[12]  When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[13]  Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[14]  The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[15]  The removing party has the burden of proving federal diversity jurisdiction.[16]  Remand is proper if at any time the court lacks subject matter jurisdiction.[17]  The Court has a duty to raise the issue of jurisdiction *sua sponte.*[18]

### B.  Procedural History Relevant to the Amount in Controversy

The Petition only generally alleges that Plaintiff suffered "personal injuries and property damage," and seeks past, present, and future: physical and mental pain, suffering, and anguish; physical disability and/or impairment of functions and activities; loss of income and/or loss of

---

[12] 28 U.S.C. § 1441(a).

[13] 28 U.S.C. § 1332(a)-(a)(1).

[14] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

[15] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). ("Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'");  *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (*quoting In re Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).

[16] *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[17] *See* 28 U.S.C. § 1447(c).

[18] *Richard v. USAA Casualty Insurance Company,* No. 17-175, 2017 WL 8944429 (M.D. La. Nov. 30, 2017), *citing Gonzales v. Thaler*, 565 U.S. 134, 141 (2012).

earning capacity; loss of enjoyment of life; and property damage.[19]  Furthermore, Plaintiff alleges she will incur future expenses for: medical expenses, drug/prescription medication, rehabilitation therapy, diagnostic procedures, travel, "and other related and necessary expenses."[20]

In the Notice of Removal, National relied the general allegations of damages in the Petition, but acknowledged that "it is not apparent from the face of Plaintiff's petition that the amount in controversy for Plaintiff Heidi McFarland's claim exceeds $75,000, exclusive of interest and costs."[21]  National also asserted the following:

9.

> Further, based on "other papers," namely Plaintiff's medical records and medical billing provided informally by Plaintiff counsel via e-mail correspondence on May 3, 2021 to undersigned counsel (*see* Exhibit "2" attached hereto), the amount in controversy appears to exceed $75,000.00, exclusive of interest and costs. Notably, there are additional medical records and medical billing that is referenced in the medical records received to date, but Plaintiff counsel does not yet have copies to provide to undersigned counsel. *See* medical records and billing provided by Plaintiff counsel, collectively attached hereto as Exhibit "3." Plaintiff's treatment records provided to Petitioner to date indicate continued treatment starting a few days after the accident at issue on June 19, 2020 through at least April 2021, and are ongoing. *See* Exhibit 3. Based on positive cervical MRI findings, Plaintiff's treating physicians recommended cervical epidural steroid injections along with other treatment. *See id.* The medical billing based solely on the records received to date from Plaintiff counsel informally is $4,501.00 and the estimated cost for one epidural steroid injection is $6,230.00. *See id.*[22]

National also relied upon Plaintiff's failure to include a binding stipulation affirmatively renouncing the right to accept a judgment in excess of $75,000, exclusive of interest and costs,

---

[19] R. Doc. 1, ¶¶ 5-6.
[20] R. Doc. 1, ¶ 7.
[21] R. Doc. 1, ¶ 8.
[22] R. Doc. 1, ¶ 9.

which National presumably asserted in response to the Petition's allegation that "Plaintiff's damages do not currently exceed $75,000, exclusive of interest and costs."[23]

In its Memorandum in Support of the Amount in Controversy, National attached additional medical records that provide more details regarding Plaintiff's injuries and treatment.[24] The records of Dr. Fred Heard of Baton Rouge Chiropractic and Wellness[25] reflect that during the Accident, Plaintiff hit her head on her steering wheel and received a laceration resulting in immediate pain, but received no emergency care at the scene and was driven home. The day after the Accident, Plaintiff had pain and stiffness in her neck, lower and upper/middle back, and right knee. Plaintiff reported her ability to work normal hours and perform normal activities was impacted by these injuries, such that she missed approximately four days from her employment of part-time custodial work.[26]

Plaintiff began seeing Dr. Heard a few days after the Accident. Plaintiff reported frequent/constant moderate bilateral neck and upper/lower back pain, frequent moderate right knee pain of 7 on a scale of 10, and constant daily headaches with pain of 4 on a scale of 10.[27] Following evaluation, Dr. Heard primarily diagnosed "moderately acute" cervical facet joint disorder and muscle spasms, sprains, strains, and dysfunction of other areas of Plaintiff's back, as well as headaches and a knee contusion. Dr. Heard secondarily diagnosed "moderately acute" cervical hypolordosis and lumbar facet joint disorder.[28] Dr. Heard assessed that Plaintiff's neck pain resulted in a 50% interference with her daily life activities but her back pain only resulted in a

---

[23] R. Doc. 1, ¶ 10 *and see* R. Doc. 1-4, ¶ 10.
[24] R. Doc. 8, p. 1 and R. Doc. 8-1.
[25] Plaintiff has two prior motor vehicle accidents that occurred in 2017 and 2018. Following the 2018 accident, Plaintiff received treatment from Dr. Heard for back injuries over twelve weeks "with good results and no residuals." R. Doc. 8-1, p. 28.
[26] R. Doc. 8-1, pp. 15-16, 21, 28 (p. 16 appears to be the page that should follow p. 28).
[27] R. Doc. 8-1, pp. 27-28.
[28] R. Doc. 8-1, pp. 18-19.

12.5% interference.[29] Dr. Heard recommended conservative treatments consisting of manual therapy and "adjunctive physical modalities," *i.e.*, stimulation and traction to the back regions three times a week for four weeks, and also an MRI.[30] He also imposed work restrictions for two weeks.[31] Plaintiff received eight chiropractic treatments consisting of "manipulation," electrical stimulation, and intersegmental traction from late June 24, 2020 until July 29, 2020, with an additional appointment on September 2, 2020.[32] Notably, during Plaintiff's second visit, Dr. Heard noted that Plaintiff's "symptomology has shown measurable improvement." Dr. Heard made similar finds in Plaintiff's subsequent visits, *e.g.*, "her symptomology is improving," "her condition is exhibiting improvement."[33] By July 23, 2020, Plaintiff only complained of "a mild level of intermittent dull pain" on her right upper back and neck, as the pain in her bilateral lower back, left upper back and left neck had all resolved, and her overall pain was at a level of 2.[34] During her July 29, 2020 reassessment, Plaintiff's neck pain was found to only interfere with her overall living activities by 18%, her lower back pain was no longer a source of interference, and she had no tenderness in her knee.[35] On September 2, 2020, Dr. Heard ordered an MRI. Fifteen days later, he referred Plaintiff for an interventional pain management consultation.[36]

As pointed out by National, on September 16, 2020, Plaintiff underwent the MRI, which revealed two bulging cervical discs, two herniated discs, and "abnormal straightening of the cervical lordosis."[37] On October 7, 2020, Plaintiff consulted with Dr. Ronald Sylvest of OrthoBR,

---

[29] R. Doc. 8-1, pp. 24-25.
[30] R. Doc. 8-1, pp. 19-20, 31.
[31] R. Doc. 8-1, p. 31.
[32] R. Doc. 8-1, pp. 1-2 (summary) and *see* notes of visits at R. Doc. 8-1, pp. 34-44. There are no detailed records of the September appointment, other than the recommendation for an MRI.
[33] R. Doc. 8-1, pp. 35, 37-38.
[34] R. Doc. 8-1, p. 40 and *see* reassessment at *id.*, p. 41 (same).
[35] R. Doc. 8-1, pp. 42-43. Dr. Heard recommended four more weeks of therapy twice a week but it is not evident from the record whether Plaintiff attended therapy in August. As noted, the records indicate only one follow up appointment in September. *Id.* at pp. 1-2 (Dr. Heard summary).
[36] R. Doc. 8-1, pp. 52-55.
[37] R. Doc. 8-1, pp. 56-57 and R. Doc. 8, p. 2.

where she reported complaints of cervical spine pain, including "a constant crick in [her] neck," which "pops and cracks," and a recurrence of neck pain after finishing chiropractic treatment. Dr. Sylvest evaluated the MRI and diagnosed cervical strain and two herniated discs (one of which was pre-existing), and recommended an epidural steroid injection ("ESI") and medication.[38] Plaintiff then consulted with Dr. Boyd Helm of OrthoBR regarding the ESI, where she complained of neck pain with a rating of 3. Dr. Boyd also diagnosed the same disc bulges and herniations, as well as cervical strain and cervical facet arthropathy, and agreed with the recommendation for an ESI.[39]

Following Dr. Helm's ESI recommendation, Plaintiff's medical records do not reflect any treatment until December 3, 2020, when Plaintiff consulted with the BR Spine Diagnostic Pain and Treatment Center ("BR Spine"). During that visit, Plaintiff again reported experiencing only intermittent neck pain, which had improved with chiropractic treatment, *e.g.*, "seems to be gradually improving."[40] Notably, this record reflects that while Plaintiff "is a candidate for a cervical ESI….she has expressed apprehension about having an injection in her spine. She would prefer to try medications before considering an [ESI]."[41] Accordingly, Plaintiff was prescribed medication and followed up with BR Spine on at least three more occasions: on January 7, 2021 for localized neck pain and intermittent "pinching;"[42] on March 31, 2021 for minor neck pain with a pain rating of 1, and reported that the medications "provid[ed] significant relief" and she was "doing well;"[43] and April 28, 2021, for localized cervical pain with a rating of 3.[44] At each of those follow up visits, Plaintiff "again expressed apprehension about having an injection in her spine,"

---

[38] R. Doc. 8-1, pp. 63-64.
[39] R. Doc. 8-1, pp. 60-61, 65.
[40] R. Doc. 8-1, pp. 66-67 and 80-81.
[41] *Id.* at p. 67.
[42] *Id.* at pp. 71-72, 77-78.
[43] *Id.* at pp. 84-87.
[44] *Id.* at pp. 91-93.

was prescribed medication, and was advised to reduce pain by practicing posture and body mechanics and using heat and ice packs.[45] At the latter two visits, the doctors noted that Plaintiff's pain "is well controlled with medications."[46] There is no documentation of further treatment.

Plaintiff's Notice in response to the briefing Order sets forth the parties' settlement negotiations, including pre-removal settlement demands of $75,000 and then $70,000, plus court costs. Additionally, the Notice references Plaintiff's settlement demand of $67,500, plus court costs, submitted on the same day as removal. Plaintiff argues that National's contention that the amount in controversy requirement is met is belied by National's evaluation of Plaintiff's claims, as evidenced by National's pre-removal ultimate settlement offer of $26,500. However, Plaintiff asserts that if National were to make a settlement offer in an amount exceeding the jurisdictional threshold, Plaintiff would consider accepting it and would not dispute that the threshold is met in this case.[47]

### C. National Has Failed to Establish, By a Preponderance, that the Amount in Controversy Likely Exceeds $75,000, Exclusive of Interest and Costs

Louisiana law prohibits plaintiffs from specifying a monetary amount of damages in their state court petitions.[48] When a plaintiff has not alleged a specific amount of damages, a removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000.[49] The removing party may make this showing either: "(1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.'"[50] Once a removing defendant has

---

[45] R. Doc. 8-1, pp. 78, 86, 93.
[46] R. Doc. 8-1, pp. 86, 93.
[47] R. Doc. 9.
[48] La. C.C.P. art. 893(A)(1); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).
[49] *Luckett*, 171 F.3d at 298 (*citing De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)).
[50] *Luckett*, 171 F.3d at 298 (*quoting Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).

established, by a preponderance, that the amount in controversy exceeds the federal jurisdictional amount, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."[51]

As National points out, and as was previously explained by the Court, it is not facially apparent from the Petition that Plaintiff's claims likely exceed the federal jurisdictional amount. There are no allegations of specific injuries and Plaintiff demands only general categories of damages (*e.g.*, past, present, and future pain and suffering, mental anguish, lost wages and medical expenses).[52] are insufficient to establish the amount in controversy. "If the complaint is vague with regard to the types of injuries, medical expenses incurred, and future medical problems resulting from the incident, the court must conclude that it was not 'facially apparent' that the amount of damages would exceed $75,000."[53]  Plaintiff also specifically pleaded in the Petition that her damages do not currently exceed $75,000, exclusive of interest and costs.[54]

Since it is not facially apparent from the Petition that Plaintiff's damages will exceed the federal jurisdictional amount, the Court must next consider whether National has met his burden of proving, through summary judgment-type evidence, that the amount in controversy in this case is likely to exceed $75,000.[55]  National relies on Plaintiff's age of thirty-six, pain rating of 3,

---

[51] *De Aguilar*, 47 F.3d at 1412.
[52] R. Doc. 1-4, ¶ 6.
[53] *Broadway v. Wal-Mart Stores, Inc.*, No. 00-1893, 2000 WL 1560167, at *2 (E.D. La. Oct. 18, 2000), *citing Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 (5th Cir. 1999).  *See also Torres v. Mall of Louisiana, LLC*, No. 17-466, 2017 WL 6884347, at *3 (M.D. La. Dec. 5, 2017) ("While Plaintiff seeks several items of damages, there is no indication of the amount in controversy related to her alleged damages.  Thus, it is not facially apparent from the Petition that the amount in controversy is likely to exceed $75,000."); *Tucker v. Cincinnati Ins. Co.*, No. 17-414, 2017 WL5762436, at *3 (M.D. La. Aug. 24, 2017) ("'Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test.'") (*quoting Davis v. JK & T Wings, Inc.*, No. 11-501, 2012 WL 278728, at * 3 (M.D. La. Jan. 6, 2012) (collecting cases)).
[54] R. Doc. 1-4, ¶ 10.
[55] At the time of removal, National attached seventeen pages of medical records and averred that it did not have all of Plaintiff's medical records at that time (R. Doc. 1, ¶ 9 and R. Doc. 1-6); however, National attached ninety-three pages of Plaintiff's medical records, with some duplicates, to its Memorandum. R. Doc. 8-1. To the extent National avers

diagnosis of two bulging and two herniated discs, past medicals of $4,501, and a recommendation for a cervical ESI costing $6,230.[56]  National also avers that Plaintiff has treated for ten months, and at Plaintiff's last documented visit with BR Spine, she was told to follow up in three months or as needed, which implies Plaintiff is still treating.[57]  However, Plaintiff's injuries and treatment, even as documented in the records, are not of the severity required to establish that Plaintiff's damages meet the jurisdictional threshold, particularly considering that Plaintiff's documented past medical expenses for ten months of treatment amount to only $4,501.[58]  The medical records indicate that the primary medical issue for Plaintiff involves two herniated discs and two bulging discs with cervical pain.[59]  However, there was no recommendation for surgery at the time of removal, nor is there a surgical recommendation in the medical records submitted.  At most, Plaintiff has had only conservative treatment consisting of an MRI and chiropractic and pain management visits, and the recommendation for an ESI costing only $6,230 is insufficient to reach

---

that Plaintiff's medical bills were received "informally" from opposing counsel (R. Doc. 8, p. 3) and thus implies that there are additional bills that it does not currently possess, "[i]f the removing defendant does not have facts sufficient to support removal when the original petition is received, it is the removing defendant's responsibility to discover those facts before effecting removal. That is precisely why the 'other paper' removal rule exists, to ensure that removals will not be filed 'before their factual basis can be proven [by the removing defendant] by a preponderance of the evidence.'" *Bonvillian v. National Liability & Fire Ins. Co.*, No. 16-1708, 2017 WL 892311, at *3 (W.D. La. Feb. 1, 2017), *quoting Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002)). *See also Nordman v. Kansas City Southern Railway Co.*, No. 08-2025, 2009 WL 976493, at *3 (W.D. La. April 9, 2009) ("This court has historically demanded that removing defendants promptly satisfy their burden of establishing by a preponderance of the evidence the requisite amount in controversy. Otherwise, the case is swiftly remanded. The court has also long discouraged premature or protective removals of cases in which the amount in controversy is in doubt because of vague pleadings about 'serious' but unspecified injuries and the like. Those protective removals waste a great deal of time for the parties and the court. To hold that the removal period was triggered in this case by the original petition would be contrary to that policy, encourage wasteful protective removals, and be inconsistent with the rules and policy set forth in *Chapman* and related Fifth Circuit decisions."). The fact that discovery has not yet been conducted does not absolve National from sustaining its burden, and National should have engaged in relevant discovery regarding the amount in controversy prior to removing this case.  This Court has addressed this issue with litigants in the past and has remanded cases such as this one, where the removing defendants failed to conduct the necessary discovery prior to removal and thereby failed to sustain their burden of establishing the amount in controversy.  *See, e.g., Autin v. Cherokee Ins. Co.,* No. 20-528, 2020 WL 7974292, at *1 (M.D. La. Dec. 7, 2020), *report and recommendation adopted,* No. 20-528, 2021 WL 41073 (M.D. La. Jan. 5, 2021).

[56] R. Doc. 8, pp. 1-3.
[57] R. Doc. 8, pp. 1-3.
[58] R. Doc. 8, p. 3.
[59] R. Doc. 8-1, pp. 56-57, 91-93.  As the records reflect, Plaintiff reported that her bilateral lower back pain was resolved and had no tenderness in her right knee as of late July 2020.  *Id.* at pp. 40-43.

the jurisdictional threshold, particularly considering that the medical records consistently reflect that Plaintiff is not inclined to undergo an ESI. There is ample authority from this Court and others in this Circuit, which has found that removing defendants have failed to establish the jurisdictional threshold when alleging similar injuries, treatment, and medical expenses. *See, e.g., Cole v. Mesilla Valley Transportation,* where this Court held that the plaintiff's medical expenses of $7,318 at the time of removal (which is more than Plaintiff's medical expenses here), with the possible additional cost of an MRI, physical therapy, and a recommendation for epidural steroid injections, along with several lumbar disc bulges, was not sufficient for federal jurisdiction.[60] In *Cole,* this Court noted: "Several recent federal court decisions have held that the removing defendant did not meet its burden of providing the amount in controversy where the plaintiff suffered disc bulging or herniation without operation, and incurred less than $15,000 in medical expenses at the time of removal."[61] Even for herniated discs, "[t]his court recognizes that "[w]hether or not a herniated disc satisfies the amount in controversy often turns on whether surgery is recommended."[62] "Accordingly, courts have found the lack of a recommendation for

---

[60] No. 16-841, 2017 WL 1682561, at *6 (M.D. La. Mar. 15, 2017), *report and recommendation adopted,* No. 16-841, 2017 WL 1684515 (M.D. La. May 1, 2017).

[61] *Cole*, 2017 WL 1682561, at *5, *citing Barrow v. James River Insurance Company*, No. 16-15967, 2017 WL 656725 (E.D. La. Feb. 15, 2017) (amount in controversy not satisfied where plaintiff incurred $4,600 in medical expenses at time of removal, and received physical therapy and an epidural steroid injection to treat disc herniations at L3-4, L4-5 and L5-S1); *McCain v. Winn-Dixie Montgomery, LLC*, No. 16-1546, 2016 WL 2908418 (E.D. La. May 19, 2016) (amount in controversy not satisfied where slip-and-fall plaintiff incurred $6,384 in medical expenses at time of removal, and medical records indicated annual cervical bulges at C4-5, C5-6, and C6-7; exacerbation of several preexisting lumbar disc herniations; and other injuries to wrist and hip); *Robichaux v. Wal-Mart Stores, Inc.*, No. 16-1786, 2016 WL 1178670 (E.D. La. Mar. 28, 2016) (amount in controversy not satisfied where slip-and-fall plaintiff incurred $7,555 in medical expenses at time of removal, and MRI demonstrated that the plaintiff had a "mild bilateral facet arthropathy at L3-4, bilateral facet arthropathy and a circumferential broad based posterior disc bulge with resultant mild central canal stenosis and bilateral foraminal narrowing at L4-5, and mild bilateral facet arthropathy at L5-S1"); *Powell v. Cadieu*, No. 15-4839, 2016 WL 1042351 (E.D. La. Mar. 16, 2016) (amount in controversy not satisfied where plaintiff incurred $1,948 in medical expenses at time of removal, and MRI tests indicated plaintiff had "lumbar facet arthrosis at L3-4 and L4-5 with bulging at L3-4 with annulus fibrosus tear with bulging at L5-S1 and L2-3 and L4-5"); *Arnold v. Lowe's Home Centers, Inc.*, No. 10-4454, 2011 WL 976512 (E.D. La. Mar. 16, 2011) (amount in controversy not satisfied where slip-and-fall plaintiff incurred approximately $12,000 in medical expenses at time of removal, and suffered a herniated disc at C3-4 for which epidural steroid injections were prescribed).

[62] *Thomas v. Louis Dreyfus Commodities, LLC,* No. 15-394, 2016 WL 1317937, at *4 (M.D. La. Mar. 11, 2016), *report and recommendation adopted,* No. 15-394, 2016 WL 1337655 (M.D. La. Apr. 1, 2016), *citing Robinson v.*

surgery to be significant in determining whether a plaintiff seeking damages including those for a herniated disc meets the amount in controversy requirement when balanced with other factors in the record."[63]

Significantly, Plaintiff's medical records reflect that Plaintiff's pain and symptoms have continuously improved over the course of her treatment, such that she no longer has bilateral lower back and right knee pain,[64] her pain is "intermittent," her condition has improved, and her pain is "well controlled with medications."[65]  Indeed, Plaintiff was counseled to treat any residual pain merely with ice packs, heat, and posture changes, unless she elects to undergo the ESI.[66]  In summary, Plaintiff's records reflect only minimal medical expenses and treatment of an MRI, pain/muscle spasm medication, and chiropractic therapy,[67] but this type of conservative treatment does not meet the jurisdictional threshold.[68]  Furthermore, while the Petition demands "loss of income and/or loss of earning capacity,"[69] there is no evidence of the amount of Plaintiff's lost wages or inability to work.  Plaintiff's medical records reflect that she only missed four days of work due to her injuries, and thus National has not established that Plaintiff has substantial lost wages.[70]

---

*Kmart Corp.*, No. 11–12, 2011 WL 2790192, at *4, n. 4 (M.D. La. Apr. 28, 2011), *report and recommendation adopted,* 2011 WL 2937952 (M.D. La. July 14, 2011).

[63] *Thomas*, 2016 WL 1317937 at *4: "*See, e.g., Hebert v. Hanco Nat. Ins. Co*., No. 07–362, 2009 WL 255948, at *4–5 (M.D. La. Feb. 3, 2009) (amount in controversy not satisfied where plaintiff 'suffers from a herniated disc, without any recommendation for surgery' and the plaintiff 'continues to work, continues to engage in activities of daily living, and does not seek damages for mental anguish'); *Espadron v. State Farm Mut. Auto. Ins. Co.,* No. 10–53, 2010 WL 3168417 (E.D. La. Aug. 9, 2010) (amount in controversy not satisfied where plaintiff in car crash suffered a 'herniated cervical disc [or] segmental cervical instability' and a 'herniated lumbar disc [or] segmental lumbosacral instability' and was a 'potential surgical candidate' and plaintiff stipulated that his damages did not exceed $50,000). There is no evidence in the record that Plaintiff's physicians have recommended him to undergo surgery for his bulging discs."

[64] R. Doc. 8-1, pp. pp. 40-43.

[65] R. Doc. 8-1, pp. 86, 93.

[66] R. Doc. 8-1, pp. 78, 86, 93.

[67] *See* the records at R. Doc. 8-1, which are discussed *above.*

[68] *See Cole,* 2017 WL 1682561, at *5 and cases cited therein and discussed *supra.*

[69] R. Doc. 1-4, ¶ 6.

[70] R. Doc. 8-1, p. 28.

National argues that the amount in controversy was found to be met on similar facts by this Court in *Williamson v. Perez*, because the *Williamson* plaintiff had only $6,254 in past medical expenses for two bulging discs and back pain, and no surgery recommendation.[71]  However, *Williamson* is distinguishable from this case because the *Williamson* plaintiff submitted a pre-petition settlement demand for $96,402.[72]  In contrast, in this case, Plaintiff avers that she made pre-removal settlement demands of exactly $75,000, plus court costs; $70,000, plus court costs; and a demand the day of removal of $67,500, plus court costs.[73]  "This Court has previously held that the amount sought in a pre-removal settlement demand letter 'is valuable evidence to indicate the amount in controversy at the time of removal.'"[74]  National did not introduce (or reference) the settlement demand.[75]  While Plaintiff's reference to a $75,000 opening demand is some evidence of the amount in controversy, it does not establish that the amount in controversy is met in this case, particularly not where, as here, Plaintiff made additional pre-removal demands that were below the requisite amount in controversy, medical expenses incurred to date are minimal, and treatment appears to be waning.  Likewise, Plaintiff's La. C.C. art. 893 allegation, *i.e.*, "Plaintiff's damages do not currently exceed $75,000, exclusive of interest and costs,"[76] is not alone dispositive of the amount in controversy.[77]  This is because the allegation is not a binding

---

[71] No. 06-791, 2007 WL 9711090, (M.D. La. Sept. 23, 2007).

[72] *Id.* at **2-3.

[73] R. Doc. 9.

[74] *Sampson v. Red Frog Events, LLC,* No. 17-1671-BAJ-EWD, 2018 WL 3966977, at *4 (M.D. La. July 17, 2018), *report and recommendation adopted,* No. 17-01671-BAJ-EWD, 2018 WL 3966264 (M.D. La. Aug. 17, 2018) *citing Lilly v. Dollar General Corp.*, No. 17-459, 2017 WL 4836539, at *3 (M.D. La. Sept. 18, 2017) (other citations omitted).

[75] *See, e.g., Thompson v. Acceptance Indem. Ins. Co.,* No.14-1424, 2014 WL 7369733, at *4 (E.D. La. Dec. 29, 2014) (noting that the Fifth Circuit has not conclusively addressed the issue of whether a pre-petition settlement demand letter can be considered relevant evidence of the amount in controversy, but noting: "However, it can be inferred from several Fifth Circuit cases that such a practice is permissible when the settlement offer reflects an honest assessment of the value of the plaintiff's claims.").

[76] R. Doc. 1-4, ¶ 10.

[77] *See Weber v. Stevenson,* No.07-595, 2007 WL 4441261, at *4 (M.D. La. Dec. 14, 2007) ("The courts have long held that an allegation in the petition that the amount in controversy is not more than seventy-five thousand dollars ($75,000) is not determinative of the amount in controversy and does not bar removal.").

stipulation that Plaintiff will not accept such amount if it is ultimately awarded, as National correctly notes.[78]

National's two other Louisiana state court cases, where general damages of $125,000 and $75,000 were awarded, are distinguishable because both of those cases were tried.[79] They are also not persuasive at this stage of the litigation, as there cannot be a meaningful comparison of this case to those cases for the purposes of determining whether the jurisdictional threshold is met because the relevant information regarding Plaintiff's injuries and damages is largely unknown.[80] As noted by the United States District Court for the Eastern District of Louisiana, National "must do more than merely show that plaintiff could recover more than the jurisdictional amount" to

---

[78] R. Doc. 8, pp. 4-6 *and see Leonard v. Sentry Select Ins. Co.,* No. 15-675, 2016 WL 1393382, at *4 (M.D. La. Mar. 11, 2016), *report and recommendation adopted,* No. 15-675, 2016 WL 1369397 (M.D. La. Apr. 6, 2016) ("In essence, Plaintiff's allegation in the Petition that the jurisdictional requirement is not satisfied does not constitute a binding stipulation. 'Because Louisiana plaintiffs are not limited to recovery of the damages listed in their pleadings, a plaintiff must make a judicial confession by affirmatively waiving the right to accept a judgment in excess of $75,000 for his pre-removal state court pleadings and stipulations to bind him. *Griffin v. Georgia Gulf Lake Charles, LLC,* 562 F.Supp.2d 775, 779 (W.D. La. 2008)….").

[79] R. Doc. 8, pp. 3-4. *Keller v. City of Plaquemine,* 96-1933 (La. App. 1 Cir. 9/23/97), 700 So.2d 1285, *writ denied,* 97-2635 (La. 1/16/98), 706 So 2d 977, cited by *Williamson,* also featured evidence of other types of damages. In that case, a sheriff's deputy received a back injury when he dove into his patrol car to avoid being hit by a sergeant who had arrived to assist with an arrest. In addition to a herniated disc and a great deal of pain (and a post-accident cancer diagnosis), the deputy missed three months of work. Upon his return, he could no longer perform his prior duties due to his injuries and resigned, for which he was awarded $25,000 in past lost wages. The trial court also credited evidence that the plaintiff was permanently disabled such that he was awarded $210,000 in future lost wages. 700 So.2d at 1394-96. The trial court's general damage award of $125,000 was apparently not appealed, and there is no discussion of the reasons supporting it; however, the trial court took evidence and heard testimony when making the award, which this Court does not have. 700 So.2d at 1391-92. Likewise, in *Hebert v. Boesch,* 2015-1791 (La. App. 1 Cir. 6/3/16), 194 So.3d 798, 805, *writ denied,* 2016-1257 (La. 10/28/16), 208 So.3d 889, the trial court had the benefit of the plaintiff's testimony when awarding $75,000 in general damages, premised upon its finding that the plaintiff had "significant" injuries that he would have to deal with for the remainder of his life.

[80] *See Silva v. Hartford Ins. Co. of the Midwest,* No. 15-5844, 2016 WL 4501288, at *5 (E.D. La. Aug. 29, 2016): "Overall, Defendant's argument that the amount in controversy is satisfied by citing two Louisiana state court cases with highly individualized facts different from the facts at issue here is unconvincing. Because the fact finder has discretion in determining an appropriate amount of damages based upon the facts of each individual case, monetary awards in previous cases are not sufficient to meet Defendant's burden of establishing that the amount of controversy here is greater than $75,000. The Defendant must point to facts in this case that establish that the actual amount in controversy exceeded $75,000. Moreover, the damages awards cited by Defendant are based on the entire record after trial, whereas subject matter jurisdiction determinations must only be based on the jurisdictional facts that exist at the time of removal. This point is especially salient when the Plaintiff's particular alleged injury cannot be broadly generalized and compared across different plaintiffs with 'similar' injuries, and when such an injury can result in widely ranging damages awards that do not always satisfy the amount in controversy requirement."

satisfy its burden.[81]  "The Defendant must point to facts **in this case** that establish that the actual amount in controversy exceeded $75,000."[82]

Finally, Plaintiff's Notice does not set forth an affirmative statement regarding Plaintiff's position as to the amount of her damages, only that National's counter-offers to her settlement demands appear to contradict National's contention that Plaintiff's damages exceed the jurisdictional threshold.[83]  This tends to indicate that Plaintiff does not agree that National has established the amount in controversy, yet Plaintiff has not filed a motion to remand.  In any case, to the extent Plaintiff avers that she would not dispute that her damages are likely to exceed $75,000, exclusive of interest and costs, *if* National were to make an offer of settlement in excess of that amount,[84] this Court has an independent duty to determine if subject matter jurisdiction exists, and the parties cannot confer jurisdiction by agreement or waiver if it does not otherwise exist.[85]

Any doubt as the existence of subject matter jurisdiction is resolved in favor of remand.[86] The amount in controversy is not facially apparent from the Petition and National has not met his burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs.[87] Accordingly, the undersigned *sua sponte* recommends

---

[81] *Silva,* 2016 WL 4501288, at *5.  *See also Barrow,* 2017 WL 656725, at *3 (accord).

[82] *Id.*  (emphasis added).

[83] R. Doc. 9.

[84] R. Doc. 9.

[85] *See Matter of Kutner*, 656 F.2d 1107, 1110 (5th Cir. 1981).

[86] *Gasch*, 491 F.3d at 281-82.  *See also Manguno*, 276 F.3d at 723 ("[A]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.").

[87] "Because Defendant has not shown by a preponderance of the evidence that the amount in controversy likely exceeds the jurisdictional amount, the Court has no need to consider whether Plaintiffs can show to a legal certainty that they will not be able to recover in excess of that amount."  *Medina v. Allstate Vehicle and Property Insurance Company,* 458 F. Supp. 3d 591, 601 (W.D. Tex. May 1, 2020).

that this matter be remanded to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[88]

## III.    Recommendation

Plaintiff's medical records that were submitted in response to the *sua sponte* Order show only ten months of conservative treatment totaling less than $5,000, steady improvement of Plaintiff's symptoms, no surgical recommendation for an accident that occurred seventeen months ago, and no desire by the Plaintiff to undergo the recommended ESI. The removing defendant, National, did not provide any evidence of the amount of lost wages, the cases upon which National relies are distinguishable, and, while Plaintiff references one pre-removal settlement demand of $75,000, plus court costs, that was followed by a reduced demand of $70,000, plus court costs, which was also made pre-removal.  Under these facts, National has not established the Court's subject matter jurisdiction.

As doubts about the propriety of removal are resolved in favor of remand, **IT IS RECOMMENDED** that this matter be **REMANDED** to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana for lack of subject matter jurisdiction *sua sponte*.

Signed in Baton Rouge, Louisiana, November 15, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[88] Plaintiff's claims in this case assert violations of state law; therefore, this Court does not have federal question jurisdiction pursuant to 28 U.S.C. § 1331.